### ALLEN v. BOARD OF STATE AUDITORS.

1. CONSTITUTIONAL LAW — INVESTING BOARD WITH FUNCTIONS OF APPELLATE COURT.

   A joint resolution of the legislature authorizing the board of state auditors to investigate the claim of innocence of one who was legally convicted of a crime, and who served in prison a part of the sentence imposed upon him, and to allow him, if it find his innocence established, a money compensation, is void as creating, in effect, a court of appeals other than the judicial ones authorized by the Constitution.

2. SAME — APPROPRIATIONS BY LEGISLATURE — TWO-THIRDS VOTE — JOINT RESOLUTIONS.

   The two-thirds vote of the legislature, essential under article 4, § 45, of the Constitution, to the validity of any "bill appropriating the public money or property for local or private purposes," is equally requisite where such an appropriation is attempted by joint resolution.

3. SAME — BOARD OF STATE AUDITORS — ADJUSTING CLAIMS — EXTENT OF POWERS.

   A petition for compensation by a citizen who served a term in prison for a crime of which, it is alleged, he was innocent, is not a "claim" which the board of state auditors may be authorized to pass upon under article 8, § 4, of the Constitution, creating such board "to examine and adjust all claims against the State;" claims, within the meaning of such provision, embracing only demands based on legal grounds.

*Mandamus* by Thomas Allen to compel the board of state auditors to pass upon a claim.    Submitted November 7, 1899.    Writ denied December 12, 1899.

*Edward S. Grece* (*Lewis M. Miller*, of counsel), for relator.

*Horace M. Oren*, Attorney General, for respondent.

GRANT, C. J.    The following joint resolution was passed by the legislature of 1899:

"Joint Resolution to provide for the Relief of Thomas Allen.

"*Whereas*, it satisfactorily appears that Thomas Allen, now of the city of Detroit, was, on or about the twentieth day of August, eighteen hundred and ninety, arrested at the city of Grand Rapids upon the charge of 'assault with the intent to do great bodily harm,' and taken a prisoner to the county jail of Mecosta county, and there confined until the fourteenth day of November following, and then tried and convicted upon said charge, of which he was entirely innocent, he being at the time of the commission of the supposed crime in the city of San Francisco, California, and was sentenced upon such conviction to imprisonment in the state prison at Jackson for the term of five and one-half years; and *Whereas*, he served upon such sentence over a year and one month before it was demonstrated that he was innocent of such offense, and received a full and unconditional pardon by the late Governor Winans; and *Whereas*, great injustice was done said Allen by reason of such arrest and imprisonment in the county jail of Mecosta county, trial, sentence, and imprisonment in the state prison, for which he should receive compensation: Therefore be it *Resolved* by the senate and house of representatives of the State of Michigan, that the board of state auditors shall investigate the claim of said Thomas Allen as set forth in the above preamble, and if, in the judgment of the board, the facts set forth are true, the board of state auditors are hereby authorized and empowered to audit and allow the said Thomas Allen, his heirs or assigns, a sum not to exceed ten dollars per month for a period not to exceed ten years from and after the passage of this joint resolution; and the board of state auditors are hereby authorized to draw their warrant on the state treasurer for the payment of the same.

"This joint resolution is ordered to take immediate effect.

"Approved May 10, 1899."

On June 21st the above resolution was presented to the board of state auditors, and the board refused to consider the claim. Petitioner then presented to this court his petition for the writ of *mandamus* to compel action on the part of the board.

This resolution is a most remarkable one. Nine years after conviction and sentence, the legislature, without an investigation, asserts in the preamble that the petitioner was entirely innocent of the crime for which he was convicted; that, instead of being in Michigan at the time of the commission of the crime, he was in California; that it was demonstrated, after serving a year and one month, that he was innocent; and then authorizes the board to allow him $10 per month for a period not exceeding 10 years.

1. The first and most important question presented is, Has the legislature the power and authority to establish a court of appeals, aside from constitutional courts, to determine the guilt or innocence of a convicted criminal? Petitioner had his day in court, was defended by counsel, was given an opportunity to introduce testimony, and, in brief, was furnished all the safeguards which the Constitution throws around one charged with crime. He was convicted. He did not appeal. Presumably, there was no error upon the trial. Nine years afterwards the legislature makes the board of state auditors an appellate court to determine whether he was guilty or innocent, and, if hey should find him innocent, to allow him damages for the wrongful conviction and imprisonment. The preamble recites that his innocence was demonstrated, but to whom or how it was demonstrated is not stated. It is not stated that the governor pardoned him because he believed him innocent. The executive of the State is not made an appellate tribunal to determine that question. When one has been convicted and sentenced by a court of competent

jurisdiction, from which he takes no appeal, and has not been granted a new trial, the only method provided by our Constitution by which he can be relieved from the penalty imposed is by a pardon by the governor. The governor may pardon with or without good reason, with or without investigation. He is not limited by the Constitution to any reason for exercising the pardoning power. Consequently his act in pardoning and his reasons therefor have no bearing whatever upon guilt or innocence. The legislature possesses no authority to organize any tribunal for the trial of persons charged with crime other than the judicial ones authorized by the Constitution. The payment by the board is conditioned upon the establishment of his innocence, which means nothing less than a determination by this board that the court which tried him erred in its judgment, and that 12 men found him guilty upon false testimony, or for some reason erred in their conclusion. It is a violation of the plain provisions of the Constitution establishing courts, and conferring the exclusive jurisdiction upon them to try civil and criminal cases. Few criminals confess their guilt. The result of sustaining the validity of this resolution would be an open door for raids upon the public funds.

As already shown, the pardon is not essential to the maintenance of such claims, for the executive is not vested with power to review the judgment of courts. It would, therefore, result that, after a convict has served his sentence, 5, 10, 15, or 20 years after his conviction, he may go to the legislature, assert that he was innocent, that he can prove it, and it may be referred to the board of state auditors, or any other number of men, public officers or private citizens, to determine whether he had a fair trial and was properly convicted. Nor is this all, but every person who is arrested and acquitted may also make his claim against the State for the wrongful arrest and detention. If such persons, when the testimony in behalf of the people is gone, will pass upon and believe the testimony which an ex-convict can introduce, he may be

awarded such a sum out of the state treasury as the legislature may see fit to allow, or the persons to whom such power is delegated may allow. The bare statement of the proposition is enough to condemn it as unconstitutional, and bad in law, morals, and equity. It is unnecessary to hunt for authorities which condemn it.

2. The resolution authorizes the expenditure of the public moneys of the State for a purely private purpose. It is a mere gratuity, for which the State received nothing, but, on the contrary, incurred expense, by reason of his arrest, trial, and imprisonment. *Bourn* v. *Hart*, 93 Cal. 321 (15 L. R. A. 431, 27 Am. St. Rep. 203); *Conlin* v. *Board of Supervisors*, 99 Cal. 17 (21 L. R. A. 474, 37 Am. St. Rep. 17). Section 45, art. 4, of the Constitution, is as follows: ''The assent of two-thirds of the members elected to each house of the legislature shall be requisite to every bill appropriating the public money or property for local or private purposes.'' The resolution did not receive a two-thirds vote of the members of the senate. This provision is mandatory, and cannot be evaded by calling a bill a ''joint resolution.'' The above provision of the Constitution is too clear and too valuable to be thus frittered away. *Burritt* v. *Commissioners of State Contracts*, 120 Ill. 322; Cush. Law & Pr. Leg. Assem. 930.

3. Section 4, art. 8, of the Constitution, provides that ''the secretary of state, state treasurer, and commissioner of the state land office shall constitute a board of state auditors to examine and adjust all claims against the State not otherwise provided for by general law.'' The jurisdiction conferred upon this board by this provision of the Constitution clearly means *claims* resting upon some legal basis. ''Claim'' is defined to be ''a demand of a right or alleged right; a calling on another for something due or asserted to be due; as, a claim of wages for services.'' Cent. Dict. The legislature can only authorize this board to pass upon claims such as are contemplated by the Constitution. It cannot authorize the board to

consider requests, petitions, or claims for appropriations which are merely gratuities, or which may be based upon sentimental or moral grounds.   It is conceded by counsel for petitioner that he has not the semblance of any legal claim.   The sole apology offered for such resolution is that it is based upon sentimental or moral grounds.   Fortunately, the people, through their Constitution, have closed the door to such·sentimental and unjust claims. The people, through their Constitution, have committed to the courts the sole jurisdiction to try persons charged with crime, and have made their judgments final, and have also prohibited their public funds to be squandered in mere gratuities of this character.

The writ is denied.

The other Justices concurred.